**BERKELEY INDUSTRIES, Plaintiff,**

v.

**DAVILO REALTY CORP., Defendant.**

**Civ. A. No. 17844.**

United States District Court
E. D. New York.

May 26, 1959.

---

William R. Liberman, New York City, for plaintiff.

Holland, Armstrong, Bower & Carlson, New York City, for defendant, by Alexander C. Wilkie, Jr., and oJseph J. Previto, New York City, of counsel.

BYERS, Chief Judge.

The plaintiff seeks a declaratory judgment of invalidity of defendant's patent No. 2,793,764 issued May 28, 1957 on application filed February 24, 1955.

The device is termed a folding rack, which serves to support garment hangers in cloak rooms, etc., and the plaintiff manufactures and sells a competing device, which infringes, if the patent is valid. As to this there is no issue.

The answer admits an existing controversy between the parties as to validity of the patent, and pleads a counterclaim for the said infringement.

Defendant's Structure.

The folding rack described in the patent which was issued to Stork, and assigned by him to the defendant corporation, is a rectangular structure of tubular metallic construction, consisting of top and bottom members, the former being the element upon which garment hangers are suspended; they are held in parallel horizontal relationship by side arms or members, that rest upon bottom supporting elements which are transverse to the side members; those supporting elements move upon casters at either end, which rest upon the floor. Those supporting elements form right angles with the side arms at the base thereof, and are sufficiently long to provide a stable base for the rack as a whole.

The bottom member of the rack is held in engagement with the side members in a manner not material to this controversy. What is here involved is the connection between the side members, and the transverse supporting members, namely two metallic straps which project from the side members from a point above the bottom member of the rack, and incline downwardly (one on each side of the side member) to join the transverse member on either side of the junction between the side member and the transverse member. Thus a triangle is formed consisting of the two straps, (the vertex being their point of union with the side member) and that part of the transverse member, which results from the joining of the straps to the latter; the space thereon which lies between the points where the straps so engage, constitutes the base of the triangle. That base is bisected by the side member at the place where it is in engagement with the transverse member. The foregoing is intended to describe the rack as illustrated in Figure 1 of the patent drawing.

One of those straps is detachable from the transverse member, thus enabling the latter to fold up against the side member when released from engagement. That is the initial step whereby the foot assembly as a whole can be folded in collapsing the entire rack.

The only claim now in litigation is No. 4, which reads:

"4. A foot assembly for a folding rack comprising a tubular post having a flattened end, a tubular foot having an elongated slot intermediate its ends adopted to removably receive the flattened end of said post, said slot being proportioned to provide clearance between its ends and the edges of the flattened end of said post when the flattened end is in said slot to facilitate the removal of said flattened end of the post from the slot, a first strap pivotally connected at one end to said post and pivotally connected at the other end to said foot intermediate one of the ends of said foot and the slot, a second strap connected at its opposite ends to said post and to said foot intermediate the slot and the opposite end of the foot, and one of the connections of said second strap being a pivoted connection and the other being a separable connection whereby said last named connection may be separated to allow said foot to be folded parallel and adjacent to said post."

It will be seen that the foregoing involves:

1. A tubular side arm having a flattened end to fit into a slot in the bottom member.

It may be commented that the fit must be snug enough to promote stability of the rack assembly, with enough play to facilitate easy insertion into and removal from the slot. Argument directed to the teaching of the patent in that respect is not important.

2. The transverse supporting member containing the slot into which the flattened end of the side member is inserted.

3. and 4. The two straps above described; one being pivotally connected with both the side arm and the supporting member or base. The other strap (14, Fig. 3) is pivotally connected with the side arm (at 15, Fig. 3) and its lower end is detachably connected with the base by a "hooking slot" (Col. 2, lines 24 et seq.) which engages pivot 17 (id. line 29). This means that it can be disengaged, i. e. the slot can be moved out of engagement with 17, to accomplish the purpose heretofore described.

The question for decision is whether the claim discloses patentable invention over the prior art.

The first two subjects above listed are not discussed by counsel except incidentally, and it is therefore obvious that the flattening of the lower end of a side post, and its insertion into a slot in the base, are not deemed to constitute in themselves a disclosure of patentable invention.

Among the patents relied upon by plaintiff the following have to do with a "collapsible clothes support," Happy, No. 2,677,518; and a "collapsible clothes-rack," Harmount, No. 1,510,272. The former was cited by the Patent Office in granting the Stork application, but not the latter.

Wolerstein, No. 389,628, a "rack for exhibiting garments," also is not cited by the Patent Office. Harmount, No. 1,510,272 is for a "collapsible clothes-rack."

These devices more closely resemble the Stork structure than do Morrison, No. 1,116,098 for "ladder and scaffold support" and Peal, No. 1,489,962 for "a hay curing device."

Both of these have to do with the provision of connections between a vertical element, (which must be firmly held in that position) to a supporting or base element, by means of rods corresponding to the straps of Stork as in Peal, or braces as in Morrison. Those connecting elements, or one of them (Morrison) can be deprived of rigid engagement to permit the base and the vertical element to fold into parallel relation for ease in removal of the device from place to place.

In Morrison this is accomplished by lifting the vertical member from the cross-piece, which permits the smaller of the two braces to swing counterclockwise upon its upper pivot, and thus the base itself is permitted to swing in the same

direction, because the opposite brace is then bent at a kind of knee hinge in its center, whereby the folding operation is completed. Since both braces remain firmly fastened to both the vertical member and the base, while in Stork one strap is entirely disengaged from the base, it cannot be said that the mechanics of the two folding operations are the same, although the same result is accomplished in both. For this reason in the opinion of this court, Morrison did not anticipate Stork in the patent sense.

While it might be argued that the substitution of a detachable brace in Morrison for the fixed one, which was Stork's contribution to this method of folding a base alongside a vertical element, was an obvious thing which any person possessing the proverbial skill should have understood, it is not necessary here to decide.

Peal's patent has for its objects "to provide a simply constructed device which may be distended to support a mass of hay spaced from the ground to permit the air to freely circulate beneath it, and which is foldable when not in use * * * for use upon sloping ground or on hillsides."

Thus the base of the vertical member called the standard, is connected to the latter by rods which at their tops are fixed to the standard, and at their lower ends into holes in the cross-piece called the base.

The rod may be hooked into a hole close to the standard on one side, and the other into a more distant hole on the other side of the point of engagement between the standard and the base. Thus the base may be fixed higher at one end than the other, as shown in Fig. 2 of the patent. That arrangement of the rods means that when they are not hooked into the holes at all, the base can swing so as to fold alongside the standard. Thus the fixed position of the top of the rods, and their detachability from the base, is the point of resemblance urged to the Stork patent with reference to the disengagement of one of his straps, to admit of folding.

The defendant argues as to this, that the plurality of unhooking in Peal is to be distinguished from the unhooking of but one strap by Stork.

It will be convenient to consider that argument in connection with the Happy patent for a collapsible clothes support. The latter has but one vertical element, at the top of which an arm extends horizontally from which hangers for clothes are suspended.

The base consists of a U-shaped element of sufficient length as to the arms, and sufficient spacing apart, to insure stability of support for the vertical element. Those arms are connected at their ends so that the base as a whole is rectangular in plan.

The vertical element is called a post or column, and the upper telescopes over the lower in a manner not presently important.

The lower section bears the number 4, and is open at the bottom so that the cross section of the base passes through that opening (Fig. 4).

The specification reads:

"The member 4 closely adjacent to its inner end, is provided transversely therethrough with an opening 6 through which is snugly but freely disposed the base portion 2, whereby the base member B" (the U-shaped element) "and the post or column C may be folded or collapsed into close relation as shown in Figure 2 of the drawings."

The column is held in firm relation to the base by element E, a V-shaped device on the column which seems to resemble a collar but is called an arm. The arms (7) of the V form the apex of an angle at the collar or arm, and extend down to and engage the base at the ends thereof. That engagement is detachable so that the base can be folded alongside the column. The precise nature of that engagement is important.

The specifications state:

"The outer extremities of the arms 7 have outwardly directed extension legs 9" (see Figs. 3 and 4)

"each of which springs from within into an opening 10" (Fig. 1) "disposed in a side arm 1 of the base member B at the rear portion thereof."

The one claim contains the following:

"In a collapsible clothes support, a base formed of a length of metal tubing bent substantially U-shaped in plan * * *, a post rising from the center * * *, a hinge connection between the lower end of the post and the intermediate portion whereby the post and the base can be collapsed * * *, a bracket mounted on the post above the base, brace arms extending obliquely downward from the bracket and engageable with the side arms of the base to sustain the post in vertical position, a bar extending between the free ends of the side arms of said base and having its ends projecting therethrough, and wheels mounted on the said ends etc."

The bearing of this patent is confined to what it disclosed as a constituent of the art, in the matter of this form of construction, rather than to the language of its claim as an anticipation of the Stork patent.

The somewhat meagre reference in the quoted specification as to springing of the ends 9 of legs 7 "from within into an opening 10" says nothing about their disengagement as a means to effect collapse of the entire structure.

The plaintiff argues that it is obvious that "the hooked ends 9 of arms 7 are disengaged from openings 10 in feet 1, and the bracing arms swung upwardly into parallelism with upright 4, and legs 1" (the arms of the U) "swung upwardly etc."

To this the defendant answers that the foregoing is a misinterpretation of Happy; that as shown in Figure 2, "when the rack is folded up, the hooked ends 9 of the straps 7 are still within the openings 10 of the foot assembly."

I cannot so read Figure 2, and do not understand how both legs 7 or their ends 9 can remain in engagement with base B if the latter is to be folded into parallel relation with column C.

In other words it would seem that Happy had disclosed in his patent granted in 1954, on application filed in 1950, without completely explaining or clearly claiming the very thing that Stork asserts that he invented in 1953 (application filed February 24, 1955) as to the detachable connection between his strap 14 and the base or transverse member. If the present understanding is correct, the art already knew that one or both connecting arms, straps or legs leading from a vertical member in a clothes rack, to the base or supporting element, could be attached thereto firmly but removably to enable the base to fold alongside the vertical element, and that concept could not constitute patentable invention at the filing date of the Stork patent.

Harmount, No. 1,510,272 has been examined but will not be discussed, since his connecting arms or legs seem to be always held in fixed connection with both the vertical and base elements, so that the collapse or folding of his entire structure does not involve any detachment whatever of either arm 9.

The references to the Sears Roebuck catalogue offered in evidence by the plaintiff do not sufficiently reveal the details of the construction of the clothes cabinets in respect to the detachability of the legs, arms, or braces, connecting the vertical member with the base, to justify making a finding as requested by the plaintiff that the invention as claimed by Stork was fully described for more than one year prior to his application, in the said publication, namely the Sears Roebuck catalogue.

This court *Finds:*

1. The invention claimed in the Stork patent, No. 2,793,764, was not patentable invention when his application was filed on February 24, 1955 in view of the prior art, and is therefore void.

*Conclusion of Law:*

1. The plaintiff is entitled to a declaratory judgment as prayed in the complaint as to validity.

Finally: If this decision in favor of the plaintiff shall be found to be clearly erroneous on the question of validity, the infringement of Claim 4 of the Stork patent by the plaintiff has not been contested by the plaintiff; in the event that the defendant's patent is finally adjudicated to be valid, the defendant is entitled to enter judgment against the plaintiff by reason of such infringement, and to have all appropriate relief against the plaintiff in that behalf.

Settle judgment on notice. If additional findings are desired, they may be settled at the same time.